# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MEGAN NICKEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-375-STE |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I.  PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for disability insurance benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 24-42). The Appeals

Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 7, 2013, the alleged disability onset date. (TR. 26). At step two, the ALJ determined Ms. Nickel had the following severe impairments: status post partial resection of cerebellar astrocytoma; headaches; disequilibrium syndrome; left ear hearing loss; status post cerebellar stroke; lupus arthritis; fibromyalgia; chronic pain syndrome; and depressive disorder. (TR. 26). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 27).

At step four, the ALJ concluded that Ms. Nickel retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b), that does not require climbing of ladders, ropes, or scaffolds; that does not require more than frequent balancing; that does not require exposure to hazards; and that consists of simple, routine tasks.

(TR. 29). With this RFC, the ALJ concluded that Plaintiff was capable of performing her past relevant work of fast food worker or cashier II. (TR. 40).

Even though the ALJ concluded that Ms. Nickel could perform her past relevant work, he made additional findings at step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the

national economy that Plaintiff could perform. (TR. 85-86). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 86). The ALJ adopted the testimony of the VE and concluded that Ms. Nickel was not disabled based on her ability to perform the identified jobs. (TR. 42).

### III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in failing to: (1) include limitations in the RFC related to severe impairments at step two and (2) properly evaluate an opinion from a consultative physician.

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

### V. NO ERROR IN THE RFC

Ms. Nickel alleges that the RFC failed to include specific limitations tied to her severe impairment of "status-post partial resection of cerebellar astrocytoma" (brain surgery). (ECF No. 13:3-13). According to Plaintiff, effects of her brain surgery included

3

headaches and dizziness, which: (1) rendered her unable to "frequently balance" as set forth in the RFC and (2) required her to lie down for an amount of time which would preclude substantial gainful activity. (ECF No. 13:3-13). Ms. Nickel also argues that the ALJ erred in his duty of explanation at step two, which impacted his step four analysis. The Court finds no merit to these arguments.

### A.    ALJ's Duty in Assessing the RFC

Once a claimant's impairments are deemed severe at step two, the ALJ has a duty to discuss their impact throughout the remainder of the disability determination. 20 C.F.R. § 404.1545(a)(2). Indeed, in formulating the RFC, the ALJ must discuss the combined effect of *all* the claimant's medically determinable impairments, both severe and nonsevere. *See Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013). However, the presence of an impairment, albeit severe, does not necessarily equate to corresponding limitations in the RFC. *Cavalier v. Colvin*, 2014 WL 7408430, at *2 (N.D. Okla. 2014).

The RFC need only include such limitations as the medical record substantially supports. *See Kirkpatrick v. Colvin*, 663 F. App'x. 646, 650 (10th Cir. 2016) ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record"); *Arles v. Astrue*, 438 F. App'x. 735, 740 (10th Cir. 2011) (rejecting plaintiff's claim a limitation should have been included in his RFC because "such a limitation has no support in the record"). In assessing an individual's RFC, the ALJ must consider the limitations and restrictions imposed by a claimant's severe impairments and express any limitations in terms of specific, work-related activities he or she is able to perform. *See* SSR 96-8p, 1996 WL 374184, at *6-7 (July 2, 1996).

B.   **The RFC Assessment**

At step four, the ALJ concluded that Ms. Nickel had the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b), that does not require climbing of ladders, ropes, or scaffolds; that does not require more than frequent balancing; that does not require exposure to hazards; and that consists of simple, routine tasks.

(TR. 29). Ms. Nickel alleges the RFC failed to account for limitations related to her brain surgery including headaches and dizziness.[1]

1.   **Dizziness**

In her brief, Ms. Nickel alleges that her brain surgery causes dizziness, which "makes her need to lie down 4-5 times a week." (ECF No. 13:3). Plaintiff's declaration in her brief, however, is a misstatement of the record. At the hearing, Ms. Nickel testified that she suffered from dizziness "about four to five times a week," which she characterized as ranging from "short term" to "severe." (TR. 65-66). Plaintiff further testified that the dizziness was "severe" about three times per month, requiring her to lie down for two to four hours each time, not four to five times per week. (TR. 66-67). The ALJ acknowledged Plaintiff's testimony,[2] but discounted it for two reasons.

---

[1]   Plaintiff also states "she experiences fatigue, which also causes her need to recline." (ECF No. 13:3). Indeed, at the hearing, Ms. Nickel testified that she needed to recline due to fatigue. (TR. 69). But aside from this single statement, Plaintiff presented no other argument regarding chronic fatigue or that it presented any specific work-related limitations, thereby precluding consideration of fatigue as a separate impairment which should have been included in the RFC. *See Kirkpatrick v. Colvin*, 663 F. App'x. 646, 650 (10th Cir. 2016) ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record"); *Arles v. Astrue*, 438 F. App'x. 735, 740 (10th Cir. 2011) (rejecting plaintiff's claim a limitation should have been included in his RFC because "such a limitation has no support in the record").

[2]   (TR. 30).

First, the ALJ relied on evidence where Plaintiff repeatedly denied dizziness to treatment providers. (TR. 36, *citing* Exhibits 3F at p. 3, 28 & 6F at p. 6). Second, the ALJ noted that Ms. Nickel's testimony regarding severe dizziness three times a month "would not all occur during workdays and during work hours." (TR. 36). Plaintiff takes issue with the latter statement, saying that it was "divined from only the Dr. ALJ's medical opinion." (ECF No. 13:4). Plaintiff's attack is misplaced, however, as Ms. Nickel herself stated when the dizziness occurred it would sometimes last "all *night* long." (TR. 66) (emphasis added).

Credibility determinations "are peculiarly the province of the finder of fact," and should not be upset if supported by substantial evidence. *Kepler v. Chater,* 68 F.3d 387, 390–91 (10th Cir. 1995). It was up to the ALJ to assess the credibility of Ms. Nickel's statements regarding whether her dizziness caused impairments limiting her ability to work. (TR. 30). Based on Plaintiff's testimony and statements to medical providers, it was reasonable for the ALJ to conclude that Ms. Nickel's "severe" dizzy spells would not interfere with her ability to work.

Ms. Nickel also states that the dizziness caused her difficulty in walking and with balance. (ECF No. 13:3). Plaintiff apparently believes that these difficulties directly conflict with the RFC which states that she is able to balance no more than "frequently." *See* ECF No. 13:3 ("[H]ow will she be able to balance 'frequently' which is two-thirds of the day?") Plaintiff implies that the ALJ should have further restricted her ability to balance based on her dizziness. For two reasons, the Court rejects such an argument.

First, the only notation in the record regarding a connection between dizziness and walking and/or balance is in the hearing testimony, where Ms. Nickel stated that prior to her surgery, she was constantly dizzy, which made her balance "off." (TR. 64). Beyond this comment, Ms. Nickel did not connect her dizziness to any particular inability to walk or balance. Second, none of the jobs cited by the VE and relied on by the ALJ at step five required an ability to balance. *See* Dictionary of Occupational Titles #323.687-014 (housekeeper), #559.687-074 (inspector hand packager); and #239.567-010 (officer helper); *see also* TR. 41-42. An error in failing to include a more restrictive balancing limitation would only be prejudicial if the step five occupations would be precluded by Ms. Nickel's inability to balance. But because the jobs did not require Plaintiff to balance, any error in this regard would be harmless. *See Lara v. Colvin,* No. CIV–12–1249–L, 2014 WL 37746, at *1, *4 (W.D. Okla. Jan. 6, 2014) (holding that the ALJ's failure to include limitation to relating with supervisors and peers on a superficial basis in RFC was harmless error where one of the occupations identified by the VE did not require interaction on more than a superficial basis); *cf. Chrismon v. Colvin,* 531 F. App'x. 893, 899–900 (10th Cir. 2013) (holding that ALJ's failure to include all limitations from RFC in hypothetical question to VE was harmless when two of the four occupations identified by the VE were consistent with RFC); *See generally Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1162–63 (10th Cir. 2012) (indicating that harmless-error analysis may be appropriate where ALJ did not properly consider evidence but "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" (internal quotation marks omitted)).

## 2. Headaches

Next, Plaintiff alleges that headaches resulting from her brain surgery cause her to be "off task" and require her to lie down for a 2-4-hour nap, 5 days a week. (ECF No. 13:3-4). According to Ms. Nickel, the need for napping "pretty much kills the ability to sustain work." (ECF No. 13:4). The Court concludes that the ALJ did not err in failing to include specific limitations in the RFC for being "off task" or napping 5 days per week.

First, being "off task" is too vague to translate to a specific work-related functional limitation and Plaintiff cites to no medical opinion which supports a finding that being "off-task" would prevent her from engaging in substantial gainful activity. Next, the ALJ acknowledged Plaintiff's hearing testimony regarding her need to lie down due to headaches, but discounted the Plaintiff's allegations regarding the severity of the symptoms due to inconsistencies between the medical evidence and Plaintiff's testimony.

For example, the ALJ relied on:

- An August 19, 2014 treatment note from Dr. Marc Chamberlain who stated that Plaintiff had reported "improvement in her headaches [ ] reflected by a marked decrease in her use of fentanyl transdermal patch;

- A December 17, 2014 treatment note from Donald Baumer, Advanced Registered Nurse Practitioner, (ARNP) who noted that although Plaintiff suffered from head pain "all the time" Plaintiff had rated her functional activity level at 8 out of 10, with medication;

- A February 11, 2014 record from ARNP Baumer noting that Plaintiff reported her functional activity level at 9 out of 10;

- A July, 27, 2015 treatment note from Dr. Adam Burkey, noting that Plaintiff had rated her functional level, with medication, at an 8 out of 10, despite still suffering from headaches;

- A September 23, 2015 record from Dr. Burkey noting that Plaintiff's functional level activity was rated at 9 out of 10, despite her complaints of head pain; and

- A January 7, 2016 record from ARNP Baumer noting that with medication, Ms. Nickel rated her daily functional level at 9 out of 10.

(TR. 31-33, 558, 562, 656, 705, 708, 711). Ms. Nickel challenges the ALJ's reliance on ARNP Baumer's records, pointing to the fact that Mr. Baumer had also noted that Plaintiff complained of pain "all the time" which she described as dull, sharp, numb, stabbing, shooting, throbbing, aching, and exhausting. (ECF No. 13:6, citing TR. 558). Plaintiff correctly cites the medical record, but as noted by the ALJ, Plaintiff reported her functional activity level at an 8 out of 10 when taking her medication. (TR. 558).

Ms. Nickel's allegations regarding the severity of her headaches and the impact they would have on her ability to work were solely subjective, requiring the ALJ to evaluate her veracity. If a medication effectively reduces a claimant's symptoms, that fact can weigh against the claimant. *See Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1171 (10th Cir. 2012) (holding that the ALJ did not err in "reject[ing] [the claimant's] complaint of disabling pain because of lack of intensity" where "medical reports reveal[ed] that medications have been relatively effective, when taken as prescribed" (emphasis and quotations omitted)); *accord Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005); *White v. Barnhart,* 287 F.3d 903, 909–10 (10th Cir. 2002).

Here, although Ms. Nickel testified that she suffered from debilitating daily headaches which required a daily nap, her reports to medical providers indicated that Plaintiff was obtaining relief from headaches though medication. The ALJ noted the

apparent inconsistency between the medical evidence and Plaintiff's testimony at the hearing, citing specific evidence in support. (TR. 29-36). That was all the ALJ was required to do, and this Court will not second guess the credibility determination, as it is supported by substantial evidence. *See Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (noting that the ALJ is required to closely and affirmatively link his credibility findings to substantial evidence in the record); *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005) ("Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.").

### C. No Error at Step Two Impacting the Findings at Step Four

Within her challenge to the RFC and as a seemingly related point of error, Ms. Nickel challenges the ALJ's step two findings, citing *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2003). Ms. Nickel's reliance on *Wells* is misplaced.

In *Wells*, the ALJ had made a step-two finding that the plaintiff's mental impairments were not severe. *Wells*, at 1068. The ALJ then stated: "[t]hese findings do not result in further limitations in work-related functions in the [RFC] below." *Id.* at 1069 (brackets in original). The Tenth Circuit Court of Appeals stated that the ALJ's language "suggest[ed]" that he may have relied on his step-two findings to conclude that the plaintiff had no limitations at step four based on mental impairments. *Id.* at 1069. If so, the Court stated, such a conclusion would be considered "inadequate under the regulations" because the RFC analysis at step four required "a more detailed assessment" "describing how the evidence *supports each conclusion*, citing specific medical facts." *Id.* (emphasis in original).

Ms. Nickel contends that the ALJ erred at step two by making findings more egregious than the step-two findings condemned in *Wells*. Plaintiff states: "Worse yet, in contrast to the step-two statement that *Wells* implied would be inadequate, at step two in Ms. Nickel's case the ALJ made *no statement whatsoever* regarding all severe or non-severe impairments in her RFC which is error." (ECF No. 13:12). This statement suggests that Plaintiff believes *Wells* requires some sort of finding at step-two regarding the impact of the impairments at step four. But such an assumption overstates the ALJ's duty at step two, and misses the import of the holding in *Wells*.

At step two, the ALJ's duty is limited to making a determination of whether the claimant suffers from a severe impairment or combination of impairments. *See Bowen v. Yuckert,* 482 U.S. 137, 140-141 (1987); 20 C.F.R. § 404.1520(c). The ALJ complied with this duty, finding that Ms. Nickel suffered from several severe impairments. *See* TR. 26. *Wells* did not require the ALJ to make a step two finding beyond severity, however. Instead, the Court in *Wells* found error "to the extent the ALJ relied on his finding of non-severity as a substitute for [an] adequate RFC analysis[.]" *Wells*, 727 F.3d at 1071. Thus, the Court rejects Plaintiff's allegation of error to the extent that it is premised on improper findings under *Wells* at step two.

**D.    Plaintiff's Other Challenges**

Intermingled in her challenge to RFC, Plaintiff presents two additional arguments. First, Ms. Nickel argues that the ALJ improperly rejected a third-party function report which had been submitted by Plaintiff's grandmother-in-law. (ECF No. 13:7). According to Ms. Nickel, the ALJ failed to "adequately analyze or discuss what it was about the

11

grandmother-in-law's statements and testimony that was not credible in light of the evidence." (ECF No. 13:7). The Court rejects Plaintiff's challenge.

In the decision, the ALJ discussed his consideration of the third-party statements, but stated that he gave them little weight "because they essentially repeat the claimant's allegations, which are not consistent with the medical evidence of record and other evidence in the record, for the reasons discussed in this decision." (TR. 40). In her brief, Ms. Nickel outlines the ALJ's duty to evaluate credibility, and then argues that the ALJ erred in failing to fulfill this duty with respect to the third-party report. (ECF No. 13:7-8). In doing so, Ms. Nickel apparently believes that the ALJ is required to evaluate the credibility of a third-party in the same manner used to evaluate the credibility of a claimant. Plaintiff is mistaken.

In an agency ruling, the SSA has stated that the ALJ should evaluate other source evidence, such as that given by her grandmother-in-law, by considering: (1) the nature and extent of the relationship; (2) whether the evidence is consistent with other evidence; and (3) any other factors that tend to support or refute the evidence. *See* SSR 06–03p, 2006 WL 2329939, at *5–6 (Aug. 9, 2006). Here, the ALJ clearly rejected the third-party report based on the fact that the statements, like those given by Plaintiff, were inconsistent with other evidence. (TR. 40). In doing so, the ALJ cited to specific evidence of record. *See supra*. As discussed, the ALJ engaged in a proper analysis of Ms. Nickel's subjective allegations and, in turn, his evaluation of the third-party statement was also proper. Thus, the Court rejects Plaintiff's argument regarding an improper evaluation of the third-party statement.

Ms. Nickel also argues that the medical records indicate her body mass index was 35, which is considered "obese" and "obesity never seems to be properly addressed in the decision." (ECF No. 13:10). According to Plaintiff, her severe fibromyalgia and chronic pain syndrome "ma[de] the ALJ's consideration of obesity so important." (ECF No. 13:10). But Ms. Nickel does not expand her argument beyond these statements, nor identify any functional limitations relating to obesity which she believes ought to have been considered in the RFC. Accordingly, the Court rejects Ms. Nickel's argument as it relates to obesity. *See Jimison ex rel. Sims v. Colvin,* 513 F. App'x 789, 798 (10th Cir. 2013) (rejecting plaintiff's argument that the ALJ failed to properly consider her obesity when there was "no record indication of any functional limitations from [the plaintiff's] obesity or of any impairments possibly caused or exacerbated by her obesity that [were] inconsistent with the RFC[.]").

## VI. NO ERROR IN THE CONSIDERATION OF AN OPINION FROM A CONSULTATIVE PHYSICIAN

Plaintiff argues that the ALJ erred in his evaluation of an opinion from consultative physician, Dr. Beth Liu. (ECF No. 13:13-15). The Court disagrees.

Dr. Liu examined Plaintiff on March 18, 2016, and concluded that she could:

- Lift up to 10 pounds occasionally,

- Sit for up to one hour at a time without interruption and 4 hours total in an 8-hour workday,

- Stand for up to 30 minutes at one time without interruption and 2 hours total in an 8-hour workday,

- Walk up to 30 minutes at one time without interruption and 1-hour total in an 8-hour workday,

- Use her hands occasionally for most hand activities, and
- Perform most postural activities occasionally, except climbing ladders or scaffolds and balancing which should be avoided.

(TR. 575). The ALJ gave Dr. Liu's opinion "little weight" because: (1) Ms. Nickel's report to Dr. Liu was inconsistent with her reports that pain medication improved her ability to function overall, mood, walking ability, ability to work or perform household chores, ability to sleep, and enjoyment of life; (2) there was no basis in Dr. Liu's exam or the medical evidence to support her opinion of limited sitting, other than minimal treatment for fibromyalgia; and (3) the opined limitations were inconsistent with Plaintiff's reported activities of caring for her young children. (TR. 38).

Plaintiff challenges the ALJ's rationales. Plaintiff argues that the ALJ improperly relied on evidence from ARNP Baumer and Dr. Burkey to discount the Plaintiff's allegations of pain. (ECF No. 13:14). But as discussed, inconsistencies *do exist* between Plaintiff's allegations of disabling pain, upon which Dr. Liu based her opinion, and Plaintiff's reports to Mr. Baumer and Dr. Burkey. *See supra*. Thus, the ALJ's reliance on these inconsistencies was a proper basis on which to reject Dr. Liu's opinions.

Plaintiff next argues that the "ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." (ECF No. 13:14). But as discussed, the ALJ relied on more than just Ms. Nickel's abilities to perform daily activities—he cited significant medical evidence which indicated that Ms. Nickel's pain had improved with pain medication and has noted that these reports were inconsistent with the reports from Plaintiff to Dr. Liu. *See* TR. 29-36, 38.

Finally, Plaintiff argues that the ALJ improperly relied on a lack of medical evidence in the record to support Dr. Liu's sitting limitations, because the ALJ himself noted that the record contained "minimal treatment related to [Ms. Nickel's] fibromyalgia" related to Plaintiff's ability to sit. (ECF No. 13:14). Plaintiff argues that the ALJ's acknowledgement of Plaintiff's "minimal treatment for fibromyalgia" somehow translates to a medical opinion regarding work-related sitting limitations stemming from her fibromyalgia. *See* ECF No. 13:14 ("Uh, that is a medical opinion, Judge."). Plaintiff is incorrect.

"Medical opinions" are defined as "statement from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The ALJ acknowledged that the Plaintiff received minimal treatment for fibromyalgia, but the Plaintiff does not cite any treatment records or present any evidence that any medical professional had opined specific sitting limitations linked to her fibromyalgia. The Court will not do this job for Plaintiff. *Kirkpatrick v. Colvin*, 663 F. App'x. at 649 (noting that "it isn't [the Court's] obligation to search the record and construct a party's arguments.").

The ALJ provided three rationales for rejecting Dr. Liu's opinion and they are all supported by substantial evidence. Accordingly, the Court rejects Ms. Nickel's challenge to the ALJ's treatment of Dr. Liu's opinion.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on November 28, 2017.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE